UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
DARIEL FORD,                                    )
                                                )
        Plaintiff,                              )
                                                )        Civil Action No.
        v.                                      )        10-40092-FDS
                                                )
LEHMAN CAPITAL, A DIVISION OF                   )
LEHMAN BROTHERS HOLDINGS, INC.,                 )
                                                )
        Defendant.                              )
_____)

-

<u>**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**</u>

**SAYLOR, J.**

        This is a dispute concerning alleged defects in a home loan and mortgage agreement.  In

2004, plaintiff Dariel Ford obtained a home loan from a predecessor-in-interest of defendant

Lehman Capital, a division of Lehman Brothers Holdings, Inc.  Ford eventually fell behind on

payments on her loan and Lehman initiated foreclosure proceedings.  Ford filed suit in the

Massachusetts Superior Court, alleging that Lehman lacks standing to foreclose and that it has

violated its contractual obligations as well as its statutory duties under Mass. Gen. Laws ch. 93A.

Lehman removed the action to this Court based on diversity of citizenship.

        Defendants have moved to dismiss the complaint for failure to state a claim under Fed. R.

Civ. P. 12(b)(6).  For the reasons that follow, the motion will be granted.

I. **Background**

The complaint and its exhibits allege the following facts.[1]

Plaintiff Dariel Ford resides in a home she owns at 32 Pickering Road in Blackstone,

Massachusetts.  (Compl. ¶ 1).  The complaint alleges that defendant Lehman Capital is a

corporation with a principal place of business in Tempe, Arizona.  (*Id.* ¶ 2).[2]

On June 17, 2004, Ford executed an adjustable-rate note for $156,000 with Argent

---

[1] The record that was delivered with the notice of removal in this action contains both marked and unmarked exhibits, some of which are duplicative.  The Court will refer to the exhibits using the following system:

Ex. 1:   Letter from Ford, dated Oct. 16, 2009
Ex. 2:   Letter from Ford, dated Sept. 1, 2009
Ex. 3:   Letter from Ford, dated April 22, 2010
Ex. 4:   Response to April 2010 Letter from Ford, dated April 26, 2010
Ex. 5:   Loan Note, dated June 17, 2004
Ex. 6:   Notice of Assignment of Mortgage, dated Nov. 15, 2007
Ex. A:   Mortgage Assignment, dated June 7, 2007
Ex. B:   Mortgage Assignment, dated Oct. 16, 2009
Ex. C:   Response to April 2010 Letter, dated April 26, 2010
Ex. D:   Mortgage Assignment, dated June 17, 2004
Ex. E:   Mass. Gen. Laws 183, § 5B Affidavit of Jon S. Davis
Ex. F:   Loan Note, dated June 17, 2004
Ex. G:   List of monthly LIBOR rates from 1989 to 2008
Ex. H:   Borrower and Property Information Form for Ford
Ex. I:   Truth In Lending Act Disclosure Statement, dated Feb. 11, 2004
Ex. J:   Truth In Lending Act Disclosure Statement, dated June 17, 2004
Ex. K:   Title Insurance Commitment Agreement to Issue Policy, dated June 16, 2004
Ex. L:   Mortgage on 32-34 Pickering Road, Blackstone, Massachusetts, dated June 2, 2004
Ex. M:   Settlement Statement Form, dated June 17, 2004
Ex. N:   Discharge of Mortgage, dated Feb. 13, 2007
Ex. O:   Illegible document
Ex. P:   Truth In Lending Act Disclosure Statement, dated May 19, 2004
Ex. Q:   Text of 940 Mass. Code Regs. §§ 8.00 *et seq.*

The Court will refer only to those exhibits explicitly referred to or implicitly relied on by the complaint.  *See* Fed. R. Civ. P. 10(c); *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("Exhibits attached to the complaint are properly considered part of the pleading . . . ."); *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document . . . , that document effectively merges into the pleadings . . . .").

[2] However, Lehman's answer and third-party complaint alleges that the company is a New York corporation with its principal place of business in New York City.  (Amended Answer & Third-Party Compl. ¶ 2).

2

Mortgage Company, LLC, secured by a mortgage on the 32 Pickering Road property.  (*Id.* ¶ 9).

The interest rate was fixed at 6.45% for the first two years, after which it would be adjustable

based on a variable index.  (*Id.* ¶ 23, Ex. F).  The agreement imposed a prepayment penalty of

several months' interest in the event that Ford paid off the loan within three years.  (*Id.* ¶ 25, Ex.

F).  Ford alleges that Argent's representative told her that she would be able to refinance the loan

with a fixed rate at a lower interest rate "soon."  (*Id.* ¶ 20).  According to Ford, she repeatedly

requested copies of the loan documents at the closing and thereafter, but was not provided with

them.  (*Id.* ¶ 9).

On June 7, 2007, Argent assigned the mortgage to Ameriquest Mortgage Company.  (*Id.*

Ex. A).  It recorded that assignment on June 8.  (*Id.*).  The next recorded assignment of the

mortgage was from U.S. Bank to Lehman on October 16, 2009.  (*Id.* Ex. B).  The complaint

alleges that there is no record of a transfer of interest from Ameriquest to U.S. Bank.  (*Id.* ¶ 12).

On July 23, 2009, Jon S. Davis, an attorney for Lehman's mortgage servicer, Green Tree

Servicing, LLC, recorded an affidavit pursuant to Mass. Gen. Laws ch. 183, § 5B purporting to

fill the gap in the chain of assignments by which Lehman obtained the mortgage.  (*Id.* ¶ 13, Ex.

E).  In his affidavit, Davis attested that Ameriquest had assigned the mortgage to U.S. Bank but

that the original assignment could not be located.  (*Id.* Ex. E).  At that time, the affidavit lacked a

certificate by an attorney at law as required by the statute.  (*Id.* ¶ 14).  However, it appears—and

plaintiff does not dispute—that the affidavit was properly certified by July 6, 2010.  (Def. Mem.

Ex. D).

At some point, Ford stopped making payments and went into default on the loan.[3]  Green Tree subsequently initiated foreclosure proceedings and scheduled a foreclosure sale for November 9, 2009.  (*Id.* ¶¶ 31, 34, Ex. 1).

On September 1, 2009, Ford, through counsel, sent a letter to Green Tree requesting that the servicer stay the pending foreclosure, provide certain information concerning the loan, and agree to a loan modification.  (*Id.* ¶ 31, Ex. 2).  The letter also alleged that Ford had actionable claims against Green Tree based on conduct that included usury, violations of federal and state securities laws, and violations of the Racketeer Influenced and Corrupt Organizations Act.  (*Id.* Ex. 2).  Ford alleges that she received no response to that letter.  (*Id.* ¶ 31).[4]

Ford sent a second letter on October 16, 2009.  In it, she alleged that Argent and its attorney violated Mass. Gen. Laws ch. 93A in their handling of the loan closing and that she retained a right to rescind the loan agreement under the Truth in Lending Act ("TILA").  (*Id.* ¶ 32, Ex. 1).  Ford also stated that the loan was "toxic" and that she had not been sent billing statements from Green Tree.  (*Id.* Ex. 1).  Again, Ford alleges that she received no response.  (*Id.* ¶ 32).

Ford sent a third letter to Green Tree on April 22, 2010.  (*Id.* ¶ 33, Ex. 3).  In that letter, she noted that a foreclosure was scheduled for May 4, 2010.  (*Id.* Ex. 3).  She also asserted that the loan was unenforceable because it was "predatory, presumptively unfair, toxic and doomed to

---

[3] The complaint does not specify when this default occurred.  However, Ford's October 2009 letter to Green Tree stated that she had not made payments for more than four years at that time.  (Compl. Ex. 1).

[4] Ford's allegation that she received no response conflicts with statements made by her attorney in a letter sent on October 16, 2009.  (Compl. Ex. 1).  In that letter, Ford's counsel stated that he had been in contact with someone named "Mary" at Green Tree and that Ford's application for a loan modification had been rejected.  (*Id.*).

foreclosure from its inception." (*Id.* Ex. 3). Finally, she purported to rescind the loan pursuant to TILA. (*Id.* Ex. 3). The complaint alleges that Ford never received a response to this letter. (*Id.* ¶ 33). However, one attachment to the complaint appears to be an April 26 letter to Ford from Green Tree in which the servicing company responded to Ford's letter and denied that Ford had any right of rescission under TILA. (*Id.* Ex. 4).

Six days later, on April 28, 2010, Ford commenced this action in the Massachusetts Superior Court and requested a temporary restraining order barring Lehman from proceeding with its planned foreclosure sale. The Superior Court granted the temporary restraining order and issued a preliminary injunction to the same effect on May 20, 2010. On May 25, 2010, Lehman removed the action to this Court.

The complaint alleges claims for breach of contract (Count 1); breach of the implied covenant of good faith and fair dealing (Count 3); and violation of Mass. Gen. Laws. ch. 93A (Counts 5 and 6).[5] In Count 2, Ford asks the Court to reform the contract or, in the alternative, to declare that it has been rescinded pursuant to Ford's rights under TILA.[6] The prayer for relief requests an injunction against foreclosure on the 32 Pickering Road property and damages for the alleged contractual breaches and statutory violations.

On June 15, 2010, Lehman moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. That motion was denied on July 1, 2010. Lehman then filed an answer and renewed its motion on July 19, 2010. At a hearing on October 26, 2010, the Court

---

[5] The complaint does not include a fourth count; it contains five counts, numbered 1, 2, 3, 5, and 6.

[6] In Count 2, Ford also requests an order that all of her previous payments under the note, as well as "all monies paid to anyone in connection with the loan," be returned to her. (Compl. ¶ 45).

ruled that it would not consider the motion until it was clear that Lehman was the current holder

of a mortgage notwithstanding the break in the chain of assignments by which it obtained the

mortgage.  The Court also indicated that it would be preferable if all parties that might have an

interest in the mortgage had an opportunity to assert their right to it before reaching a dispositive

ruling in the matter.

In January 7, 2011, Lehman sought leave to amend its answer to include a counterclaim

and third-party claims against Citigroup, Inc. and U.S. Bank, N.A., as Trustee.  Those third-party

claims requested a declaration that Lehman is the current holder of a mortgage originally granted

by Ford to Argent Mortgage Company, LLC on or about June 17, 2004.  The Court granted

Lehman leave to amend its pleadings, and Lehman did so on March 1, 2011.

On April 14, 2011, U.S. Bank and Lehman filed a joint statement stipulating that U.S.

Bank held no interest in either the mortgage or the underlying loan and agreeing that judgment be

entered in favor of Lehman as to its third-party claim against U.S. Bank.  A notice of entry of

default against Citigroup was entered on May 13, 2011.

During a telephone conference held on that day, Ford informed the Court that she had

filed for bankruptcy.  She requested, and the Court granted, a continuance of the action while

those proceedings were pending.  On July 11, the Court issued a judgment on Lehman's third-

party complaint against Citigroup.  As part of that judgment, the Court ruled:

> [T]he Court hereby declares that Lehman is the current holder of an Adjustable
> Rate Note executed by Dariel Ford on or around June 17, 2004, in the principal
> amount of $156,000 that was originally made payable to Argent Mortgage
> Company, LLC and that was secured by a mortgage on property located 32
> Pickering Road, Blackstone, Massachusetts.  This Court also declares that Lehman
> is the holder of the Mortgage and therefore has authority to foreclose under Mass.
> Gen. Laws ch. 244, § 14.

(July 11, 2011 Order).  On July 19, plaintiff informed the Court that the bankruptcy estate would be abandoning that case and that this action could therefore proceed.

On September 16, 2011, Lehman again renewed its motion to dismiss.

## II.    Procedural Posture

 Fed. R. Civ. P. 12(b) states that "[a] motion asserting [failure to state a claim] must be made before pleading if a responsive pleading is allowed."  By contrast, Fed. R. Civ. P. 12(c) allows for judgment on the pleadings upon a motion that is made "[a]fter the pleadings are closed—but early enough not to delay trial . . . ."  Although the motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), defendant filed it after submitting an answer to the complaint.  (The motion that defendant now renews was originally filed before defendant filed its answer.).  Because discovery has been stayed pending resolution of the motion, there is no risk that deciding it now will unduly delay trial.  Accordingly, the Court will construe the motion as a motion for judgment on the pleadings.  *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (holding that a motion to dismiss that is filed after the close of pleadings should be construed as a motion for judgment on the pleadings).

## III.   Standard of Review

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss."  *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).  It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole."  *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006).  Because a Rule 12(c) motion "calls for an assessment of the merits of the case at

an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

However, to survive a defendant's motion for judgment on the pleadings, a plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). The court will therefore grant defendants' motion for judgment on the pleadings if plaintiffs' well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## IV.   Analysis

### A.   Standing

As a preliminary matter, the record shows that Lehman has standing to foreclose on the mortgage. Standing to bring a foreclosure by sale action is generally limited to "the mortgagee or the person having his estate in the land mortgaged [e.g., his assignee]." Mass. Gen. Laws ch. 244 § 14 (2004). *See Nichols v. Cadle Co.*, 139 F.3d 59, 61-62 (1998) (assignment of mortgage under § 14 normally conveys power of sale). Here, prior proceedings in this action establish that defendant is an assignee of the mortgage that is at issue.

Although there is no recorded assignment from Ameriquest to U.S. Bank, Lehman has

recorded an affidavit under Mass. Gen. Laws ch. 183, § 5B attesting that the assignment was in fact made.  The statute provides as follows:

> [A]n affidavit by a person claiming to have personal knowledge of the facts therein stated and containing a certificate by an attorney at law that the facts stated in the affidavit are relevant to the title to certain land and will be of benefit and assistance in clarifying the chain of title may be filed for record and shall be recorded in the registry of deeds where the land or any part thereof lies.

Mass. Gen. Laws ch. 183, § 5B.  In the affidavit, Davis claims to have personal knowledge of the assignment from Ameriquest to U.S. Bank and certifies, as an attorney at law, that the facts are relevant and will be of benefit and assistance in clarifying the chain of title.  (Compl. Ex. E; Def. Mem. Ex. D).  On its face, the affidavit appears to comply with the statute and therefore to establish Lehman's standing as a valid assignee.  The complaint does suggest that the affidavit had no certification when it was first executed.  (Compl. ¶ 14).  However, defendant has submitted a copy of the affidavit that includes a certification, and plaintiff does not challenge the authenticity of that certification.  (Def. Mem. Ex. D).  Accordingly, the record is sufficient to demonstrate defendant's standing to foreclose.  *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion [for judgment on the pleadings].").

This conclusion is confirmed by the Court's judgment as to defendant's third-party claims. The stipulation of U.S. Bank and the default of Citigroup on those claims has established that Lehman is the current holder of the mortgage and therefore has authority to foreclose under Mass. Gen. Laws ch. 244, § 14.  Thus, although Ford originally contended that a "gap" in the

chain of assignments linking Argent (the original mortgage holder) to defendant rendered defendant's interest in the mortgage invalid, this contention can no longer be sustained. Accordingly, for purposes of this motion, the Court finds that defendant is the current holder of the mortgage and that, unless the mortgage is shown to be void, defendant has standing to foreclose on the property.

**B.     Contract Claims (Counts 1 and 3)**

Count 1 of the complaint fails to state a claim for breach of contract.  Under Massachusetts law, a plaintiff alleging breach of contract must show "that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach."  *Brooks v. AIG Sunamerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007).  Under this standard, a plaintiff "must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep."  *Id.*  Here, plaintiff does not assert that defendant failed to perform any promise or obligation contained in the loan agreement.  Count 1 alleges only that "[t]he contract . . . is an illegal contract" and that "the acts of [defendant] seeking to enforce an illegal contract constitutes a . . . breach of contract."  (Compl. ¶ 49).  As defendant correctly argues, one cannot breach a contract simply by seeking to enforce it.  In any event, plaintiff concedes that Count 1 is inadequately pleaded.[7]

Count 3, which alleges breach of the covenant of good faith and fair dealing, is similarly inadequate to state a claim.  Under Massachusetts law, a covenant of good faith and fair dealing is

---

[7] In her brief, plaintiff contends that her claim for breach of contract should more properly be considered "part and parcel" of Count 2.  To the extent the allegations relating to breach of contract inform plaintiff's claim for reformation of the contract, the Court will consider them in evaluating that count.

implied in every contract.  *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).  This implied covenant requires that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract."  *Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass. 451, 471-72 (1991) (quotations omitted).  However, the covenant "may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance."  *Uno Restaurants*, 441 Mass. at 385.

Here, the complaint does not allege that defendant engaged in bad-faith conduct that injured or interfered with plaintiff's ability to benefit from the parties' agreement.  Count 2 asserts only that Lehman "has violated the obligation of good faith and fair dealing by . . . attempting to foreclose on the loan and trying to enforce the terms of a contract that are predatory and illegal." (*Id.* ¶ 49).  However, defendant's attempts to adhere to the loan agreement by enforcing its terms cannot constitute a breach of the covenant because, if that were the case, the implied covenant would  undermine the express terms of the contract.  *See Autohaus, Inc. v. BMW of N. Am., Inc.*, 1993 U.S. Dist. LEXIS 21386 (D. Mass. Dec. 20, 1993) ("[T]he convenant cannot be invoked to override the parties' undertakings.").  Plaintiffs' position that the loan agreement itself was "predatory" or unfair may be relevant to its claims under Mass. Gen. Laws ch. 93A, but it does not support a claim for breach of the covenant of good faith and fair dealing.

Accordingly, defendant's motion to dismiss will be granted as to Counts 1 and 3.

### C.   Rescission Claim (Count 2)

Count 2 seeks two forms of relief.  First, plaintiff requests "reformation and/or a declaration of parties' rights and liabilities" on the grounds that the parties dispute the terms and conditions of the loan agreement.  Second, it requests a declaration from the Court that the underlying loan has been rescinded pursuant to TILA, 15 U.S.C. § 1635, and Regulation Z, 12 C.F.R. § 226.23.

The first form of requested relief cannot be granted because defendant is not an originator of the agreement.  Courts possess the equitable power to reform an instrument where that instrument fails to express the actual agreement entered into by the parties.  However, "[i]t is the settled rule that the decree of reformation . . . [does not apply] to purchasers for value without notice and those standing in similar relations."  *General Builders Supply Co. v. Arlington Co-op. Bank*, 359 Mass. 691, 696-97 (1971) (holding that second and third mortgagees were *bona fide* purchasers for value and thus reformation of the initial mortgage agreement was barred).  Plaintiff does not allege that defendant had any notice of the purported intentions of Argent or of any agreement other than that which is contained in the loan documents.  Because defendant appears to be a *bona fide* purchaser or assignee of the mortgage without notice of the actual intentions of the original contracting parties, this Court may not alter the rights and obligations of the parties by reforming the loan agreement.

Plaintiff's second ground for reformation, that she allegedly rescinded the loan pursuant to her rights under TILA, is without merit.  Under TILA, consumers may rescind a loan for a lender's failure to provide certain material disclosures.  15 U.S.C. § 1635(a).  Regulation Z, which implements TILA's right of rescission, provides that "[t]he consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice [of

the consumer's right to rescind], or delivery of all material disclosures, whichever occurs last."

12 C.F.R. § 226.23(a)(3).  Plaintiff claims that the three-day period in which she could rescind

never began to run because she never received material disclosures related to her loan.  In the

April 2010 letter, plaintiff purported to have finally exercised her right to rescind the loan.

(Compl. Ex. 3).

However, a consumer's right to rescind under TILA is not indefinite in duration.  As

Green Tree indicated in its response to the April 2010 letter, Regulation Z also provides that "[i]f

the required notice or material disclosures are not delivered, the right to rescind shall expire 3

years after consummation."  12 C.F.R. § 226.23(a)(3).  Here, the loan transaction at issue was

consummated on June 17, 2004, so any right of rescission plaintiff might have had under TILA

expired in 2007.  She did not attempt to exercise the right until 2010.  Thus, even if plaintiff never

received the appropriate disclosures, the regulation prohibits the relief she now seeks.

Accordingly, defendant's motion to dismiss will be granted as to Count 2.

### D.      Chapter 93A Claims (Counts 5 and 6)

Plaintiff asserts two claims under Mass. Gen. Laws ch. 93A.  Count 5 alleges that the

original lender engaged in unfair and deceptive practices by negotiating a loan agreement that was

"unconscionable, fraudulent, and predestined for foreclosure."  (Compl. ¶¶ 52-53).

Count 6 alleges that defendant violated the statute by seeking to foreclose on a mortgage

that it knew was "legally unconscionable" and that had been rescinded by the borrower.  This

allegation amounts to a claim for wrongful foreclosure in violation of Chapter 93A.[8]   However,

---

[8] The common-law tort of wrongful foreclosure is one of at least two vehicles by which Massachusetts law allows a homeowner to recover damages when a foreclosure is executed in an unfair manner.  *Levin v. Reliance Co-op. Bank*, 301 Mass. 101, 103 (1938) (holding that an action in tort lies where a mortgagee or its assignee

the only aspect of defendant's conduct in seeking to enforce the mortgage that plaintiff alleges to

have constituted bad faith is defendant's decision to enforce of the mortgage notwithstanding

alleged defects in the loan's origination.  Thus, plaintiff's "wrongful foreclosure" claim rests

entirely on the same allegations as Count 5.  Count 6 is therefore properly comprehended as a

restatement of plaintiff's Chapter 93A challenge to the loan's origination in Count 5.[9]

Defendant's motion will be granted as to Counts 5 and 6 because the Chapter 93A claim is

barred by the statute of limitations.  A claim under Chapter 93A must be brought within four

years of the accrual of the cause of action.  Mass. Gen. Laws ch. 260, § 5A; *Fine v. Huygens,*

*DiMella, Shaffer & Assocs.*, 57 Mass. App. Ct. 397, 404 ( 2003).  Generally, accrual occurs at

the time of the allegedly unlawful conduct.  However, Massachusetts courts apply a discovery

rule, under which the accrual of a cause of action is delayed until "an event or events have

occurred that were reasonably likely to put plaintiff on notice that someone may have caused her

injury."  *Cambridge Plating Co., Inc. v. Napco, Inc.*, 991 F.2d 21, 28 (1st Cir. 1993); *see also*

*Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 207 (1990); *Lambert v. Fleet Nat'l Bank*, 449 Mass.

119, 126 (2007) (holding that the discovery rule applies to Chapter 93A claims).[10]

---

executing a power of sale violates its duty "to exercise good faith and put forth reasonable diligence").  The other vehicle is the statutory cause of action for unfair or deceptive trade practices provided by Mass. Gen. Laws ch. 93A, § 11.  *Kattar v. Demoulas*, 433 Mass. 1, 13 (2000).  Although these two forms of action are technically distinct, they are substantially similar in nature.  *See id.* (noting that a Chapter 93A claim based on conduct related to a foreclosure sale is "simply a new case for an old proposition:  where foreclosure of a mortgage, even on an actual default, is conducted in bad faith to the detriment of the mortgagor, an action will lie").

[9] Plaintiff also alleges in Count 6 that the attempted foreclosure was made in bad faith because the loan had been lawfully rescinded.  This allegation is also surplusage because it restates the claims of Count 2.  As discussed with respect to that count, plaintiff's contention that the April 2010 letter had the effect of rescinding the loan agreement is incorrect because the letter was sent after the expiration of her right of rescission.

[10] Some courts have articulated the discovery rule as postponing accrual of a claim as long as the underlying facts giving rise to the claim remain "inherently unknowable," a standard that is "no different from, and is used interchangeably with, the 'knew or should have known' standard."  *Williams v. Ely*, 423 Mass. 467,

Here, Count 5 alleges that Argent, defendant's predecessor-in-interest, violated Chapter 93A by entering into a loan contract with plaintiff that was "unconscionable, fraudulent, and predestined for foreclosure" under the standard endorsed in *Commonwealth v. Fremont Inv. & Loan*, 452 Mass. 733, 739 (2008).  (Compl. ¶ 52).[11]  The execution of that loan agreement occurred on June 17, 2004.  (*Id.* ¶ 9).  As of that date, plaintiff certainly knew the terms of the loan; even assuming that the real effect of the loan was not made known to her at that point, she had four years in which to investigate.  If, as plaintiff alleges, she was not provided with certain loan documents that would have revealed the unfairness of the transaction, that failure to provide essential documentation itself would have put her on notice of her Chapter 93A claim.  Thus, any Chapter 93A claim arising from the circumstances of that transaction would have become time-barred on June 17, 2008.

---

474 n.7 (1996); *see also Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 64 (1st Cir. 1997).

[11] In *Fremont*, the Supreme Judicial Court affirmed an order of the Superior Court granting a preliminary injunction to the Commonwealth in a Chapter 93A action by the attorney general against certain home loan lenders.  *Fremont*, 452 Mass. at 752.  In deciding that the Commonwealth was likely to prevail, the Superior Court had relied on four characteristics of the loans at issue that, it held, made those loans "presumptively unfair" under the statute:

> (1) the loans were [adjustable rate mortgage] loans with an introductory rate period of three years or less; (2) they featured an introductory rate for the initial period that was at least three per cent below the fully indexed rate; (3) they were made to borrowers for whom the debt-to-income ratio would have exceeded fifty per cent had [the lender] measured the borrower's debt by the monthly payments that would be due at the fully indexed rate rather than under the introductory rate; and (4) the loan-to-value ratio was one hundred per cent, or the loan featured a substantial prepayment penalty (defined by the judge as greater than the "conventional prepayment penalty" defined in [Mass. Gen. Laws ch. 183C, § 2]) or a prepayment penalty that extended beyond the introductory rate period.

*Fremont*, 452 Mass. at 739 (2008).  The SJC affirmed the Superior Court's finding that, in the context of the loans at issue in that case, these factors established that the Commonwealth was likely to succeed.  *Id.* at 750.

Accepting all allegations as true and construing all inferences in plaintiff's favor, the Court finds that plaintiff was plainly on notice of the facts underlying her Chapter 93A claim on the day of the closing.  The discovery rule cannot save that claim from the limitation imposed by Mass. Gen. Laws ch. 260, § 5A.

Accordingly, defendant's motion to dismiss will be granted as to Counts 5 and 6.

**IV.**     **Conclusion**

For the foregoing reasons, defendants' motion to dismiss is GRANTED as to all counts.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: April 17, 2012